OPINION
This appeal originates from the Portage County Court of Common Pleas. Appellant, Matthew S. Chapman, appeals his conviction and sentence.
On April 16, 1998, appellant was indicted on three counts: (1) aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1) ("count one"); (2) felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1) and/or (A)(3) ("count two"); and (3) kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(2) and/or (A)(3) ("count three"). On April 21, 1998, appellee, the state of Ohio, filed a motion to amend all three counts of the indictment, which was granted on May 20, 1998.[1] At the arraignment on April 22, 1998, appellant entered a plea of not guilty to all charges and bail was set.
On May 18, 1998, appellant filed a motion to suppress the identification of him as the perpetrator. A suppression hearing was held on June 4, 1998. On June 5, 1998, the trial court overruled appellant's motion to suppress.
On June 8, 1998, appellee filed a notice of intent to use evidence of admissions by appellant's accomplice, Seth Charles Dean ("Dean"), pertaining to the kidnapping of Mr. Joe Schossler ("the victim"). Appellant entered a written plea of guilty to aggravated robbery, a felony of the first degree, and felonious assault, a felony of the second degree. However, he denied any involvement in the kidnapping. Further, he was informed of the maximum penalties for both charges: ten years in prison and a $20,000 fine for the aggravated felony and eight years in prison and a $15,000 fine for the felonious assault. On June 9, 1998, a bench trial was held on count three of the indictment, kidnapping.[2] Prior to the commencement of the trial, the trial judge went over appellant's plea with him.
At the trial, appellee called Dean to the stand. He related that on the evening of April 8, 1998, he was shooting pool at Laundry 101, a laundromat that has pool tables and serves alcohol. He placed a telephone call to his friend, appellant, but appellant was not home. Thereafter, Dean stated that the victim, whom he had never met before, approached him at the tavern about playing a game of pool. While the two were playing pool, appellant returned Dean's telephone call. After the two finished their game, the victim asked if Dean knew of any parties. Dean replied that he and appellant were planning on attending a party later that evening. When Dean and the victim exited to the parking lot, they discussed each other's vehicles. The victim mentioned that he wanted to sell his car and Dean suggested that his brother might be interested in buying the car.[3] Dean noticed that the victim's vehicle had chrome rings on it and a car stereo. At that point, the thought crossed his mind to rob the victim. The victim proceeded to tell Dean that he needed a place to stay because he was homeless.
Dean again spoke with appellant and told him about the victim's car stereo and rims and that it was a prospect for theft. Thereafter, Dean dropped his vehicle off at home and he and the victim went to pick appellant up at a bar. The three men drove around trying to find a party where they could meet some girls. Appellant then directed the victim to McClintocksburg Road. After they exited the vehicle, appellant asked the victim how much he paid for the rims. The victim replied that he spent about $800. The conversation turned to the car stereo and appellant acted as though he was interested in buying the victim's auto. The three men began walking and appellant pulled out two iron pipes.[4]
He kept one and handed Dean the other one. Dean admitted that it was at that point that the assault and robbery took place. He and appellant stole the victim's car. Appellant and Dean proceeded to pick up Dean's girlfriend, Amy Fotheringham ("Fotheringham"). They disclosed to Fotheringham what they had done.
Fotheringham recalled that when Dean and appellant picked her up, they mentioned "[s]omething about the kid [the victim]." They told her that they had taken his car and she noticed blood on appellant's hands. Basically, Fotheringham's testimony was in corroboration with the events as depicted by Dean.
Following Fotheringham's testimony, the victim took the stand. He related that on the evening in question, he went to the tavern to do his laundry. He saw Dean playing pool alone and asked if he could join the game. As the two continued their game, they discussed "[g]irls and cars and pool." The victim testified that Dean's cellular phone rang five to ten times that night. The victim recalled that Dean asked him if wanted to attend a party. The two proceeded to the parking lot to inspect the victim's auto after he mentioned that he wanted to sell it. Dean indicated that his brother might be interested in purchasing the automobile. The victim was under the impression that appellant was Dean's brother. The victim revealed that he and Dean left the bar in separate cars, dropped Dean's vehicle off at his apartment, and then picked up appellant. The victim explained that he was taking directions from both Dean and appellant. According to the victim, it was during the drive that appellant acted as though he was interested in buying the car.
The victim's version of the events that transpired that night was virtually the same as that described by Dean. However, the victim stated that he did not tell anyone he was homeless, but he said that since he had argued with his mother, he was not going home that night. The victim was asked if he felt he was in danger when he pulled his car over and started walking. He replied that he did not feel he was.
At the conclusion of appellee's case-in-chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court overruled.
Appellant took the stand in his own defense. He testified that he received an initial phone call from Dean at about 9:30 p.m. During that conversation, the two only spoke about their plans for the evening. Dean called appellant three to four more times that night and it was during the third call that Dean mentioned wanting to rob the victim. Appellant stated that there were no plans to take the victim to a party or on "a wild goose chase." He related that he did not give any directions to the victim that night nor did he have any idea where they were going. Appellant explained that he did not do anything to make the victim drive his car anywhere, he did not intimidate or threaten the victim, and he did not do anything to mislead the victim about going to a party.
On cross-examination, appellant revealed that he threw all of the clothes he was wearing that night away except for his jacket. He indicated that he and Dean "didn't do it for the money." He also stated that he knew he might run into resistance and that was why he was carrying the weapons. At the conclusion of appellant's testimony, appellant renewed his motion for acquittal, but the trial court overruled it. The trial court found appellant guilty of kidnapping and ordered a presentence investigation.
On June 19, 1998, appellant filed a sentencing memorandum claiming that R.C. 2941.25(A) was applicable to his case, and thus, he should not be sentenced on every count. Appellee filed a response to appellant's memorandum. A sentencing hearing took place on June 22, 1998. At that hearing, appellant's attorney made a statement and then appellant spoke in his own behalf. He apologized to the victim for what he had done. He also stated that he believed he needed punished.
In a judgment entry dated June 26, 1998, the trial court stated that appellant entered a plea of guilty to the charges of aggravated robbery and felonious assault and that he was found guilty of kidnapping. The court found that the offenses of aggravated robbery and felonious assault were allied offenses of similar import, and hence, should be merged for sentencing purposes. However, the trial court did not find the elements of kidnapping and aggravated robbery to be the same, so they were not merged.
In its entry, the trial court explained that: (1) appellant had an extensive juvenile record; (2) the victim suffered serious physical and psychological harm; (3) after considering the factors under R.C. 2929.12, prison was consistent with the purpose of R.C.2929.11 and appellant was not amenable to community control sanctions; (4) because of the extensive injuries appellant caused the victim, it would demean the seriousness of the offense if the shortest term applied; and (5) the offense of aggravated robbery was the worst form of that offense and appellant posed a great likelihood of committing future crimes. Accordingly, the trial court sentenced appellant to a prison term of ten years for the offense of aggravated robbery and a term of nine years for the offense of kidnapping. Appellant received a credit of seventy-two days for time already served. The sentences were to run consecutively because the trial court reasoned that since the harm was so great, a single term would not adequately reflect the seriousness of the conduct and the severe physical harm inflicted on the victim. Appellant timely filed the instant appeal and now asserts the following assignments of error:
 "1. The trial court erred to [appellant's] prejudice by entering a judgment of conviction against [appellant], when the evidence was insufficient to sustain the conviction and the judgment was against the manifest weight of the evidence.
 "2. The [trial] court erred in not granting the appointed defense counsel a coninuance [sic] of trial when the prosecutor faild [sic] to provided [sic] timely discovery, thus causing [appellant] to use ineffective assistance of counsel, a violation of his rights pursuant ot [sic] the Fifth, Sixth, and Fourteenth Amendment[s] of the United States Constitution and Section 10 Article 1 of the Constitution of Ohio.
 "3. The trial court erred to the prejudice of [appellant] when it granted [appellee's] motion to amend the indictment, where the amendment changed the identity of the crime and presented risks that [appellant] was convicted of an offenses [sic] on evidence that was never presented to the grand jury.
 "4. The trial court erred when it entered a judgment of conviction and sentenced [appellant] on allied offenses of similar import in violation of Revised Code § 2941.25 and also in violation of state and federal prohibitions against the imposition of multiple punishments as set forth in the Double Jeopardy Clause[.]
 "5. The trial court erred when it imposed the maximum sentence on [appellant] for the merged counts of aggravated robbery and felonious assault, as the trial court made a summary statement that did find the minimum sentence would demean the seriousness of [appellant's] conduct or inadequately protect the public. The trial court further erred when it imposed the near maximum sentence on the 19 year old [appellant], who had no prior felony convictions. The trial court further erred when it ran the sentences consecutively, based upon the mere statement that the court found that the harm was so great a single term does not adequately reflect the seriousness of the conduct, because of the serious physical harm given to the victim."
In his first assignment of error, appellant contends that the evidence was insufficient and did not satisfy appellee's burden of proof and that his conviction was against the manifest weight of the evidence.
In State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 10, we held:
 "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 "`"(. . .) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. . . ."'" (Emphasis sic.)
In Schlee, supra, unreported, at 11, we also stated that:
 "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence, "(. . .) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (. . .)"' (Citations omitted.) (Emphasis added.) . . ."
A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction."State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
In the instant matter, appellant was convicted of kidnapping, in violation of R.C. 2905.01(A), which states that:
 "No person, by force, threat, or deception . . . shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
". . .
 "2) To facilitate the commission of any felony or flight thereafter; [or]
 "3) To terrorize, or to inflict serious physical harm on the victim or another; . . ."
Hence, in order to convict appellant of kidnapping, appellee needed to present sufficient evidence that appellant by force, threat, or deception, knowingly removed the victim or restrained him of his liberty for the purpose of holding him as a shield or a hostage, or to facilitate the commission of any felony or flight thereafter or to terrorize or inflict serious physical harm on him or another. R.C. 2905.01.
In the case at hand, appellee presented evidence that Dean told appellant of his plan to steal the victim's car stereo and rims. Subsequently, Dean and the victim left the bar and went to pick up appellant. Appellant was introduced to the victim as Dean's brother and appellant acted as if he was interested in buying the victim's auto. Furthermore, the victim was told that he was being taken to a party, although there was no party. Instead, appellant and Dean led the victim to a secluded area where they assaulted him with weapons. According to the victim's testimony, he was given directions from both Dean and appellant. Hence, it is our determination that the evidence supports a factual conclusion that the victim was removed by deception from his car for a short duration to facilitate a robbery.
From the foregoing analysis, the trial court could reasonably conclude that appellant was involved in the kidnapping of the victim. It is within the discretion of the trier of fact to determine the credibility of witnesses and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Here, the trial court must have found appellee's witnesses to be more credible. Thus, we conclude after reviewing the record and weighing the evidence and all reasonable inferences, that the judgment of the trial court was supported by competent, credible evidence. Further, there was sufficient evidence presented at trial to demonstrate that appellant committed a kidnapping. Likewise, after an examination of the entire record, it is our view that there was no manifest miscarriage of justice requiring the conviction to be reversed. Therefore, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant argues that by the trial court not granting a continuance, he received ineffective assistance of counsel.
The grant or denial of a continuance is a matter that is entrusted to the sound discretion of the trial court. State v.Lorraine (1993), 66 Ohio St.3d 414, 423. Therefore, the standard of review on appeal is whether the trial court abused its discretion. State v. Unger (1981), 67 Ohio St.2d 65, 67. An abuse of discretion connotes more than simply an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157. In determining whether the trial court abused its discretion, a reviewing court must weigh the potential prejudice to the defendant against the trial court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. State v. Powell (1990),49 Ohio St.3d 255, 259.
In Strickland v. Washington (1984), 466 U.S. 668, 687, the Court held that in order to evaluate a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment."Id. The second prong of the test directs the defendant to show that the deficient performance prejudiced his defense. Id. In order for there to be prejudice, the defense counsel's errors must be shown to be so serious that it deprived the defendant of a fair trial. Id.
In the case at bar, Dean's testimony was subject to cross-examination by appellant's trial counsel, who questioned Dean extensively about his prior statements. Appellant's attorney also stated that he read Dean's statement several times in preparation for trial. Therefore, appellant did not demonstrate that his counsel's performance was deficient. Further, there is no reason to believe that appellant was prejudiced in any way by the denial of his motion for continuance. Hence, it is our view that the trial court did not commit an abuse of discretion by overruling appellant's motion. Appellant failed to demonstrate that he was provided ineffective assistance of counsel. Accordingly, appellant's second assignment of error lacks merit.
In his third assignment of error, appellant claims that the trial court erred by granting appellee's motion to amend the indictment because the amendment changed the identity of the crime and presented risks that appellant was convicted of an offense on evidence that was never presented to the grand jury. In support of his argument, appellant cites State v. Vitale (1994), 96 Ohio App.3d 695, which overturned a conviction where a trial court allowed the date on an indictment to be amended. Appellee contends that Vitale differs from the present matter because it held that the amendment of the indictment led to a conviction for different conduct than presented before the grand jury, which did not occur here.
In Vitale, the appellate court held that the trial court committed reversible error by permitting the state to amend an indictment, where the amendment changed the identity of the crime and presented a risk that the defendant was convicted for an offense based on evidence that was never presented to grand jury.Id. at 702. Specifically, the Vitale court concluded that the trial court erred by allowing the state to "change the date of the offense from June 14, 1991 to `June 14, 1991 through June 21, 1991 inclusive.'" Id. at 699. Vitale was decided by the Eighth District Court of Appeals, which subsequently held, in State v.Smith (Aug. 21, 1997), Cuyahoga App. No. 70855, unreported, at 17, 1997 WL 476828, that:
 "usually, in a criminal case the exact date and time are immaterial unless in the nature of the offense exactness of time is essential. . . . Whether a trial court erred by giving an `on or about' instruction is dependent upon the facts of the particular case. Such an instruction is subject to a harmless error analysis. . . ."
Crim.R. 7(D) addresses the situation of amending indictments and states:
 "The court may at any time before, during or after a trial amend the indictment . . . in form or substance . . . with the evidence, provided no change is made in the name or identity of the crime charged."
The rule clearly permits errors of omission to be corrected during or after the trial, as long as the amendment to the indictment makes no change in the name or identity of the crime charged. State v. O'Brien (1987), 30 Ohio St.3d 122, 125-126. The court reasoned that the accused should not be "misled or prejudiced by the omission of such element from the indictment."Id. at 128. A reversal of the conviction is only warranted if, from considering the entire proceeding, the appellate court finds a failure of justice. Crim.R. 7(D).
In the case sub judice, appellee moved to correct the date the crimes were committed. The date is not an element of kidnapping that appellee must prove. The original indictment stated that the offenses occurred on April 9, 1999. However, the offenses actually occurred on April 9, 1998. It is our determination that the trial court did not err by permitting the amendment because the correction of the date did not change the name or identity of the counts pursuant to O'Brien. See State v. Sellards (1985),17 Ohio St.3d 169, 171 ("Ordinarily, precise times and dates are not essential elements of offenses. . . . A certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not per se impermissible or necessarily fatal to a prosecution."). In the present case, the date was simply listed incorrectly on the indictment, and correcting it did not change the name or identity of the counts. Appellant's third assignment of error is without merit.
In his fourth assignment of error, appellant asserts that trial court erred by entering a judgment of conviction and sentencing appellant on allied offenses of similar import in violation of R.C. 2941.25 and also in violation of state and federal prohibitions against the imposition of multiple punishments as set forth in the Double Jeopardy Clause. Appellant argues that the trial court erred by not merging the kidnapping count with the aggravated robbery count since the court had already merged the aggravated robbery and felonious assault counts for purposes of sentencing. Specifically, appellant contends that the aggravated robbery offense was allied with the kidnapping charge. Further, appellant argues that every robbery necessarily involves a kidnapping because the victim's movements are restrained during the robbery.
R.C. 2941.25 governs multiple counts and states:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
The Supreme Court of Ohio issued a two-tiered test to determine if two or more crimes are allied offenses of similar import:
 ". . . In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. . . ." (Citations omitted.) Newark v. Vazirani (1990), 48 Ohio St.3d 81, syllabus.
Where the trial court concludes that the elements of multiple counts correspond adequately, the court must next examine whether the crimes were committed with a separate animus. If the court determines that the crimes were committed with a separate animus, the defendant can be convicted of both offenses. Only if the same conduct supports both offenses, or if the court finds that the defendant had a single animus for both offenses, are the offenses found to be allied offenses of similar import.
The first element of the allied offense test emphasizes the similarity between the elements, but restricts cumulative punishments for both greater and lesser included offenses. Consequently, it is necessary to examine the statutory elements of the two charged offenses in light of the circumstances under which the two crimes were committed. State v. Lang (1995), 102 Ohio App.3d 243,250.
In State v. Logan (1979), 60 Ohio St.2d 126, syllabus, the Supreme Court of Ohio established the test to be applied when determining if kidnapping and another crime are allied offenses of similar import pursuant to R.C. 2941.25(B), and stated:
 "(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
 "(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."
We note that the Logan court endeavored to "establish reasonable criteria for the determination of what might constitute separate animus, within the meaning of R.C. 2941.25(B), when a defendant has been charged with multiple offenses including kidnapping." The court stated: "Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, A priori, commit another, then he may well possess but a single animus." Id. at 131. As an example of such a situation that court cited robbery and kidnapping.
For instance, where a defendant transports his victim ten miles and commits two crimes separately, kidnapping and aggravated robbery are not allied offenses of similar import. State v.Muenick (1985), 26 Ohio App.3d 3, 6. Yet, where a defendant was charged with kidnapping for placing a blanket over the victim's head and tying the victim's hands behind her back while committing a robbery, robbery and kidnapping were held to be allied offenses of similar import since the restraint was incidental to the underlying offense of robbery. State v. Parker (1986), 31 Ohio App.3d 128,130.
In the case at hand, appellant pleaded guilty to one count of aggravated robbery and was convicted of one count of kidnapping.
The trial court found that the elements of kidnapping and aggravated robbery were not similar, and hence, they did "not merge for sentencing purposes." R.C. 2905.01(A) and (A)(2) define kidnapping as the removal of a person by force, threat, or deception from the place where the other person is found or the restraint of the liberty of the other person in order to facilitate the commission of any felony or flight thereafter. The elements of aggravated robbery are set forth in R.C.2911.01(A)(1), which forbids anyone from attempting or committing a theft offense while having a deadly weapon on or about the offender's person or under the offender's control and either displaying or brandishing the weapon or indicating that the offender possesses the weapon or uses it. Therefore, aggravated robbery requires proof of an attempted theft or a theft whereas kidnapping requires a removal or a restraint.
Here, the victim was deceived by Dean and appellant and directed to a secluded oil well driveway where he was told to park and leave his vehicle after they had obviously traveled a significant distance which involved more than a momentary temporal period. Leading the victim to this isolated area was not essential to commit the aggravated robbery. Rather, it was a separate and distinct crime committed with a separate animus. Therefore, the trial court did not err in merging the offenses of aggravated robbery and kidnapping for purposes of sentencing. Appellant's fourth assignment of error is not well-founded.
In his final assignment of error, appellant claims that the trial court abused its discretion by sentencing him to a prison term of ten years for aggravated robbery and nine years for kidnapping on a consecutive basis. Appellant argues that the court must make specific findings before imposing the maximum sentence upon him.
A reviewing court will not reverse a sentence unless an appellant shows that the trial court is statutorily incorrect or that it abused its discretion by failing to consider sentencing factors. State v. Earle (June 26, 1998), Lake App. No. 96-L-195, unreported, at 5. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Adams,62 Ohio St.2d at 157.
If a trial court imposes the maximum prison term, it must "make a finding that gives its reasons for selecting the sentences imposed. . . ." R.C. 2929.19(B)(2). R.C. 2929.19(B)(2)(d) provides:
 ". . . If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term. . . ."
R.C. 2929.14(C) provides that:
 ". . . [T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense . . . only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders . . . and upon certain repeat violent offenders. . . ."
R.C. 2929.12 provides a general list of factors the trial court must consider in deciding whether an offender committed one of the worst forms of the offense or whether an offender posed the greatest risk of recidivism.
In the case at bar, in determining whether appellant committed one of the worst forms of aggravated robbery and kidnapping, the court must consider if the victim suffered serious physical, psychological, or economic harm. R.C. 2929.12(B)(2). In ascertaining if appellant posed a risk of recidivism, the court must verify whether appellant was on parole or probation at the time of the offense, whether he showed genuine remorse for the offense, and whether he had pleaded guilty to or been convicted of a prior criminal offense. R.C. 2929.12(D)(1) and (5). See, also, R.C. 2929.12(E)(2) and (5).
In State v. Edmonson (1999), 86 Ohio St.3d 324, the Supreme Court recently addressed the statutory requirements for imposing a maximum sentence. The court determined that "[i]n order to lawfully impose the maximum term for a single offense, the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." Id. at 329.
Additionally, this court has held that according to the new sentencing laws, the findings mandated by R.C. 2929.12 and R.C.2929.14 must appear in the judgment, in the transcript of the sentencing hearing, or somewhere on the record of the sentencing exercise. State v. Boles (June 25, 1999), Ashtabula App. No. 98-A-0061, unreported, at 8. We have also stated that:
 "A sentence which repeats the language of R.C. 2929.14(E)(3) without any [indicia] of a consideration of the factors set forth would be insufficient. For a meaningful review, the record must contain some indication, by use of specific operative facts, that the court considered the statutory factors in its determination." State v. Kase (Sept. 25, 1998), Ashtabula App. No. 97-A-0083, unreported, at 4.
In the case sub judice, when the trial court sentenced appellant it explained:
 ". . . [U]pon considering the more serious and less serious factors [it found] that the victim suffered both serious physical, psychological and economic harm; that [appellant] in considering recidivism [had] a history of delinquency adjudications, therefore, community-based sanctions [were] not appropriate.
". . .
 ". . . [A]fter having tried this case that this [was] one of the most serious aggravated robberies this Court has seen and the seriousness of physical harm caused to the victim and also that [appellant's] extensive juvenile record indicates [sic] would not adequately protect the public. Therefore, the Court would find that it would demean the seriousness of this offense and the shortest term should not apply.
 ". . . [T]o apply the longest term . . . the Court must make a finding that the offender committed the worst form of the offense or that he possesse[d] a greater likelihood of committing future crimes.
 "The Court would find, again based on the facts heard in the trial, that [appellant] did commit the worst form of the offense of aggravated robbery, therefore, impose a sentence of ten years. . . .
". . .
 "[For the kidnapping charge], the Court would find that this was a serious offense, which extreme physical harm was caused to the [victim], therefore, the minimum sentence does not apply.
". . .
 ". . . The Court would find that the harm was so great, a single term does not adequately reflect the seriousness of the conduct because of the serious physical harm given to the victim. . . ."
In our view, under the new sentencing scheme, the trial court sufficiently made a finding that appellant committed one of the worst forms of the offense and that he posed the greatest risk of recidivism. Appellant's fifth assignment of error is without merit.
For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.
 ___________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., O'NEILL, J., concur.
[1] All three counts of the indictment listed the wrong date on which the incident took place. The indictment stated that the incident occurred on "the 9th day of April, 1999," but actually, it should have read: "on or about the 9th day of April, 1998."
[2] Appellant waived his right to a trial by jury.
[3] Apparently, Dean led the victim to believe that appellant was his brother.
[4] The record is unclear as to whether appellant had two pipes or two barbells.